IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

TRISHA A.,
*Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, L.A., L.A.,
*Appellees*.

No. CV-18-0178-PR
Filed August 15, 2019

Appeal from the Superior Court in Maricopa County
The Honorable Arthur T. Anderson, Judge
No. JD529230
**AFFIRMED**

Opinion of the Court of Appeals, Division One
245 Ariz. 24 (App. 2018)
**VACATED**

COUNSEL:

Sabrina Ayers Fisher, Maricopa County Public Advocate, Suzanne M. Nicholls (argued), Deputy Public Advocate, Mesa, Attorneys for Trisha A.

Mark Brnovich, Arizona Attorney General, O.H. Skinner, Solicitor General, Brunn W. Roysden III, Division Chief Counsel, Appeals and Constitutional Litigation Division, JoAnn Falgout (argued), Assistant Attorney General, Phoenix, Attorneys for Department of Child Safety

JUSTICE LOPEZ authored the opinion of the Court, in which CHIEF JUSTICE BRUTINEL, VICE CHIEF JUSTICE TIMMER, and JUSTICES GOULD, BALES (RETIRED), and PELANDER (RETIRED) joined. JUSTICE BOLICK dissented.

_____

JUSTICE LOPEZ, opinion of the Court:

¶1        We consider whether a parent must provide evidence of a "meritorious defense" to succeed on a Rule 46(E) motion to set aside a severance judgment following a Rule 64(C) acceleration of a final adjudication as a result of a missed initial hearing, pretrial conference, or status conference. *See* Ariz. R.P. Juv. Ct. 46(E) , 64(C). We hold Rule 46(E) requires evidence of a meritorious defense.

**I.**

¶2        Trisha A. ("Mother") is the mother of two minor children. On September 9, 2015, Mother was hospitalized for substance abuse treatment for heroin and methamphetamine use. Four days later, Mother left the hospital against medical advice without completing the treatment program. That day, the Department of Child Safety ("DCS") took custody of her two children, placed them with their maternal grandmother, and filed a dependency action, alleging the children were dependent due to Mother's substance abuse and neglect. On September 22, over Mother's objection, the juvenile court found the children dependent.

¶3        Over the next eleven months, DCS offered Mother services to help her achieve sobriety and to reunify her with her children, including substance abuse testing and treatment, parent-aide services, and visitation with the children. However, Mother shunned the substance abuse testing and treatment, failed to achieve sobriety, missed most of the parent-aide sessions and many visits with her children, and failed to maintain contact with the DCS case manager.

¶4        On August 3, 2016, nearly a year after the dependency determination, DCS filed a petition to sever Mother's parental rights on the grounds of abandonment, substance abuse, and out-of-home placement. *See* A.R.S. § 8-533(B)(1), (3), (8)(a). As part of the proceedings, Mother received and signed a "Notice of Parental Termination Action," notifying her that failure to appear at certain proceedings could result in the court finding she had waived her legal rights and admitted the grounds against her and proceeding in her absence with a final termination adjudication hearing.

**¶5**         Mother appeared at her initial severance hearing and initial mediation but, despite notice, failed to appear for a combined report and review status hearing and pretrial conference set for January 18, 2017 (the "January hearing").  Mother's attorney told the juvenile court he had informed Mother of the January hearing and he did not know why she had not appeared.  Because Mother's attorney presented no good cause for Mother's absence, and pursuant to DCS's request, the court proceeded to an accelerated severance hearing under Rule 64(C).

**¶6**         At the accelerated severance hearing, the DCS case manager testified that Mother had only sporadic contact with the children during the sixteen-month dependency, was unable to maintain a normal parental relationship with them, and failed to provide them with food and shelter.  The case manager also opined that Mother was unable to discharge her parental duties due to substance abuse and her inability to maintain sobriety.  Based on this testimony and the record in the case, the court found the three severance grounds proven by clear and convincing evidence and, by a preponderance of the evidence, that termination was in the children's best interests.

**¶7**         Nine days later, Mother moved to set aside the severance judgment pursuant to Rule 46(E), arguing that she failed to appear at the January hearing because she had been admitted that same day to an in-patient drug treatment program ("Lifewell").  Without giving DCS an opportunity to respond, the juvenile court granted Mother's motion to set aside the severance judgment due to her physical inability to attend the January hearing.

**¶8**         DCS objected to Mother's motion and filed a motion to have the court reconsider its order setting aside the severance judgment, arguing that she failed to notify her counsel or the court of her intended admission to Lifewell; she had refused to participate in drug treatment for more than a year and waited until the day of the pretrial conference to do so; and she checked out of Lifewell only four days after admission and did not complete the program.  DCS also urged the court to deny Mother's motion because she failed to assert any meritorious defense to the underlying severance action. The court set a February 23 status hearing to consider whether to "set aside the set-aside" of the severance (the "February hearing").

**¶9**         Mother also failed to appear at the February hearing.  DCS argued that Mother failed to establish good cause for her nonappearance at the January hearing because her Lifewell admission form indicated that she was admitted at noon on January 18—an hour and a half after the time the January hearing had been scheduled—and that Mother left

four days after admittance, against medical advice. The children's guardian ad litem argued Mother failed to notify her counsel or the court that she could not attend the January hearing. In response, Mother's counsel argued that the Lifewell admission form did not indicate Mother's check-in time and that Mother had emailed him on February 19, stating that she had been in jail and the hospital since January 8. The court reinstated its January severance order finding Mother failed to establish good cause for her absence. Mother appealed, arguing only that the juvenile court erroneously reinstated its severance judgment.

¶10 On appeal, the court of appeals ordered supplemental briefing regarding (1) whether Rule 64(C) violates due process; (2) whether the court should reconsider *Christy A. v. Arizona Department of Economic Security*, 217 Ariz. 299 (App. 2007); and (3) whether, to the extent *Christy A.* remains controlling law, a meritorious defense is required to set aside Rule 64(C) accelerated hearing judgments. At DCS's request, the court of appeals stayed the appeal pending this Court's decision in *Brenda D. v. Department of Child Safety*, 243 Ariz. 437 (2018). *Trisha A. v. Dep't of Child Safety*, 245 Ariz. 24, 29 ¶ 10 (App. 2018).

¶11 After supplemental briefing and *Brenda D.*'s issuance, the court of appeals vacated the juvenile court's severance order, holding that requiring a meritorious defense to set aside a Rule 64(C) accelerated hearing judgment violated Mother's right to due process. *Id.* at 27 ¶ 1, 35 ¶¶ 33–34. The court reasoned that the meritorious defense requirement, as recognized in *Christy A.*, should apply only to Rule 66(D)(2) cases involving missed final termination hearings rather than to Rule 64(C) cases involving missed pre-final termination proceedings. *Id.* at 32–34 ¶¶ 22–28.

¶12 We granted review because the standard concerning a Rule 46(E) motion to set aside a severance order following a Rule 64(C) accelerated severance hearing presents a recurring issue of statewide importance. We have jurisdiction pursuant to article 6, section 5(3) of the Arizona Constitution.

**II.**

¶13 As a preliminary matter, we do not consider the constitutionality of Rule 64(C) accelerated severance hearings because Mother did not raise the issue on appeal, and we presume that such hearings are constitutional. *See State ex rel. Brnovich v. City of Tucson*, 242 Ariz. 588, 599–600 ¶ 45 (2017) ("We generally do not reach out to decide important constitutional issues or to upset established precedent when no party has raised or argued such issues."); *Gallardo v. State*, 236 Ariz. 84, 87 ¶ 9 (2014) (noting that we "presume that the legislature acts constitutionally" (internal quotation marks omitted)).

4

Although the dissent addresses the constitutionality of Rule 64(C) accelerated severances, *infra* ¶¶ 33–48, we are not persuaded to depart from our customary approach to refrain from addressing constitutional issues that are not raised by the parties.

¶14 We note, however, that even if a juvenile court proceeds with an accelerated severance hearing following a parent's waiver of rights under Rule 64(C), DCS must still prove, by clear and convincing evidence, the underlying statutory severance ground and, by a preponderance of the evidence, that severance is in the child's best interest. *See, e.g.*, § 8-533; *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248–49 ¶ 12 (2000). Moreover, in certain circumstances, parents are allowed at least six months, or as many as fifteen months, to resolve issues before DCS files a motion to sever parental rights. *See* § 8-533(B)(8)(a)–(c). We also emphasize, as we did in *Brenda D.*, that juvenile courts' authority to accelerate termination hearings under Rule 64(C) is discretionary. 243 Ariz. at 448 ¶ 40. When exercising this discretion, courts should consider a parent's willingness to participate in the case, including availing themselves of services intended to remedy the issues leading to dependency, and the stage of the process.

¶15 We consider only whether the meritorious defense requirement infringes a parent's due process rights in the context of a Rule 46(E) motion to set aside a severance judgment entered after a Rule 64(C) accelerated hearing. We note, however, that the juvenile court did not consider, much less impose, a meritorious defense requirement on Mother; rather, the court reinstated the severance order because Mother failed to show good cause for her nonappearance at the January hearing. But because the court of appeals sua sponte raised the meritorious defense issue, and the issue is a recurring one of statewide importance and is fully briefed, we exercise our discretion to review it. *See Marianne N. v. Dep't of Child Safety*, 243 Ariz. 53, 56 ¶ 13 (2017); *Jimenez v. Sears, Roebuck & Co.*, 183 Ariz. 399, 406 n.9 (1995).

## III.

¶16 We review de novo whether requiring parents to show a meritorious defense to set aside a judgment entered after a Rule 64(C) accelerated severance procedure violates parents' rights to due process. *See Brenda D.*, 243 Ariz. at 442 ¶ 15 (noting constitutional claims are reviewed de novo).

## A.

¶17 Rule 64(C) (which applies to initial hearings, pretrial conferences, status conferences, or termination adjudication hearings), Rule 65(C) (which applies to the initial termination hearings), and Rule 66(D)(2) (which applies to final severance hearings) establish the procedures if a parent fails to appear without "good cause." The

court of appeals reasoned that the "good cause" standard varies between Rules 64(C), 65(C), and 66(D)(2) because the "procedures and rights at stake in these rules are distinctly different." *Trisha A.*, 245 Ariz. at 30 ¶ 14. But the standard for good cause under these rules should be consistent because the language of these rules is identical or substantially similar, and Rule 64(C) pertains to all types of hearings, including initial hearings, pretrial and status conferences, and termination adjudication hearings. *See* Antonin Scalia & Bryan A. Garner, *Reading Law* 170 (2012) (explaining under the presumption of consistent usage canon that "[a] word or phrase is presumed to bear the same meaning throughout a text"). Notably, in *Marianne N. v. Department of Child Safety*, we observed that, upon acceleration, the termination hearing becomes a severance hearing under A.R.S. § 8-863. 243 Ariz. at 58 ¶ 22 ("When the juvenile court 'go[es] forward' [under Rule 64(C)] with the adjudication termination hearing in the parent's absence, it can proceed as contemplated by § 8-863(C) . . . ." (first alteration in original)). Consequently, we reject the court of appeals' conclusion that the "good cause" standard varies between these rules.

¶18     Rule 46(E), which governs motions in juvenile court to set aside judgments in dependency, guardianship, and terminations of parental rights, expressly requires that a motion to set aside a juvenile court's judgment conform to the requirements of Arizona Rule of Civil Procedure 60(b)–(d). *See* Ariz. R.P. Juv. Ct. 46(E). Arizona Rule of Civil Procedure 60(b) ("Civil Rule 60(b)"), in turn, sets forth the requirements for relief from civil judgments and orders, namely, six grounds a party can rely upon to set aside a judgment. Although Civil Rule 60(b) does not expressly include a meritorious defense requirement, we have interpreted the rule (and its antecedents) since territorial times to require a party seeking to set aside a judgment to also prove a meritorious defense. *See, e.g.*, *Gonzalez v. Nguyen*, 243 Ariz. 531, 534 ¶ 12 (2018) ("[W]e have consistently bounded a trial court's discretion under [Civil Rule 60(b)(6)] by requiring a defendant to assert a meritorious defense."); *Daou v. Harris*, 139 Ariz. 353, 358–59 (1984) (stating that Civil Rule 60(b) requires a showing of a meritorious defense); *Hirsch v. Nat'l Van Lines, Inc.*, 136 Ariz. 304, 309 (1983) (requiring a meritorious defense when alleging excusable neglect under Civil Rule 60(b)(1)); *DeHoney v. Hernandez*, 122 Ariz. 367, 371 (1979) (same); *Copper King of Ariz. v. Johnson*, 9 Ariz. 67, 71–72 (1904) (noting that it is a "well-settled requirement[] of law" that a motion to set aside a judgment be supported by a meritorious defense "in order that injustice may not be done in granting a new trial where no valid cause of action or defense exists"). Thus, Rule 46(E), by reference to Civil Rule 60(b) and as interpreted by this Court, includes a meritorious defense requirement.

¶19     Consistent with Rule 46(E) and the caselaw governing Civil Rule 60(b), *Christy A.* held that a parent who fails to appear at a final severance hearing must show "good

cause" for the nonappearance and a meritorious defense to the severance grounds to set aside a "default" judgment entered under Rule 66(D)(2). 217 Ariz. at 304 ¶ 16. Here, the court of appeals expressly declined to extend *Christy A.*'s holding to judgments entered after a hearing accelerated under Rule 64(C). *Trisha A.*, 245 Ariz. at 32 ¶ 22. The meritorious defense requirement does not arise from *Christy A.*, but rather from Rule 46(E)'s express incorporation of Civil Rule 60(b)'s requirements and the longstanding caselaw interpreting it. In sum, a parent seeking to set aside a severance judgment entered after failing to appear at the final severance hearing—including one accelerated by Rule 64(C)—must show "good cause" for the nonappearance and a meritorious defense.

**B.**

¶20 The court of appeals also seemingly conflated "good cause" under Rules 64(C), 65(C)(6)(c), and 66(D)(2) with the "good cause" required to set aside a severance judgment under Rule 46(E). But the "good cause" required under Rules 64(C), 65(C)(6)(c), and 66(D)(2) differs from that required under Rule 46(E) because the rules operate in different contexts.

¶21 A showing of "good cause" under Rules 64(C), 65(C)(6)(c), and 66(D)(2) does not include a meritorious defense requirement because the "good cause" inquiry centers on the justification for nonappearance at a hearing and necessarily precedes a final severance judgment. *See Brenda D.*, 243 Ariz. at 444 ¶ 23 ("[T]o avoid due process concerns, a juvenile court's discretionary finding of waiver based on a parent's failure to appear for a termination adjudication hearing should be made at the start of the hearing, before the proceeding commences."). Thus, parents who appear before the end of a hearing, as in *Brenda D.*, are not required to show a meritorious defense because they are not seeking to set aside a judgment but rather to establish good cause for their late appearance to avoid waiver of their rights occurring prior to their appearance. *See id.* at 448 ¶ 41 (noting that "[i]f . . . the parent does appear late but during the hearing, the juvenile court should immediately halt the proceedings to determine whether the parent can show 'good cause' for his or her late arrival under Rule 66(D)(2)").

¶22 Rule 46(E), by contrast, governs the standard for setting aside judgments, including those resulting from hearings under Rules 64(C), 65(C)(6)(c), and 66(D)(2), in dependency, guardianship, and terminations of parental rights. As such, Rule 46(E) informs the court's decision whether to set aside a severance order as a final judgment. *See* Ariz. R.P. Juv. Ct. 46(E) (citing Ariz. R. Civ. P. 60(c)(2) (stating that a motion to set aside a judgment "does not affect the judgment's finality or suspend its operation")). At

this procedural stage, a parent must provide "good cause" for their nonappearance *and* prove a meritorious defense. A parent must show a meritorious defense under Rule 46(E) because the motion to set aside seeks to overcome the presumptively valid judgment's finality. The purpose of this requirement is manifest—a child who has been abused or neglected requires permanency and stability, and a severance judgment should not be disturbed without a legitimate basis.

¶23 The dissent contends that the majority errs in "import[ing]" the meritorious defense requirement into Rule 46(E) because Civil Rule 60(b) does not expressly require the meritorious defense, it "makes considerably less sense" in the parental-rights context, and a Rule 64(C) severance judgment, unlike a civil default judgment, lacks finality unless a parent fails to show good cause for nonappearance at a hearing. *Infra* ¶¶ 49–60. We disagree for several reasons. First, Rule 46(E)'s incorporation of Civil Rule 60(b)'s "requirements" is unqualified and, as noted, *supra* ¶ 18, this Court has interpreted Civil Rule 60(b) to require a meritorious defense since territorial times, well before Rule 46(E) incorporated its standards. Second, the rationale for requiring a party to articulate a valid justification before setting aside a final judgment—whether a civil litigant or a parent in a parental-rights action—applies with equal force because it implicates finality interests. Finally, Rule 46(E)'s incorporation of Civil Rule 60(c)(2), which provides that a motion to set aside a judgment "does not affect the judgment's finality or suspend its operation," belies the notion that the finality of a Rule 64(C) and a civil default judgment differ.

## C.

¶24 Having established Rule 46(E)'s meritorious defense requirement and its applicable standards, we turn to the court of appeals' holding that the requirement, as applied to a motion to set aside a severance order entered after a final hearing accelerated by Rule 64(C), necessarily infringes a parent's due process right to a fundamentally fair proceeding under *Mathews v. Eldridge*, 424 U.S. 319 (1976), and *Lassiter v. Department of Social Services*, 452 U.S. 18 (1981). *Trisha A.*, 245 Ariz. at 33–34 ¶¶ 24–28. We hold that the meritorious defense requirement does not violate parents' due process rights.

¶25 "Parents possess a fundamental liberty interest in the care, custody, and management of their children," but "parental rights are not absolute," and "[a] court may order severance of parental rights under certain circumstances, so long as the parents whose rights are to be severed are provided with 'fundamentally fair procedures' that satisfy due process requirements." *Kent K. v. Bobby M.*, 210 Ariz. 279, 284 ¶ 24 (2005) (quoting *Santosky v. Kramer*, 455 U.S. 745, 753–54 (1982)). To determine whether a parent received a fundamentally fair proceeding, we consider and balance the parent's affected

interest, the risk of erroneous deprivation of the parent's interest, and the state's interest. *See Mathews*, 424 U.S. at 335.

**¶26**      As a prerequisite to setting aside a judgment or order, the meritorious defense requirement presents a minimal burden, "requiring only 'some legal justification for the exercise of the power, some substantial evidence to support it.'" *Gonzalez*, 243 Ariz. at 534 ¶ 12 (quoting *Richas v. Superior Court*, 133 Ariz. 512, 514 (1982)).  Stated differently, proving a meritorious defense requires no more than showing a "substantial defense to the action," *Richas*, 133 Ariz. at 517 (quoting *Union Oil Co. of Cal. v. Hudson Oil Co.*, 131 Ariz. 285, 289 (1982)), that is not "facially unmeritorious," *Emcasco Ins. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987) (quoting *Gross v. Stereo Component Sys., Inc.*, 700 F.2d 120, 123 (3d Cir. 1983)).

**¶27**      The Rule 46(E) meritorious defense requirement does not violate a parent's rights under *Mathews*.  First, although the requirement implicates a parent's interest at stake under the first *Mathews* factor—the care, custody, and management of the child—it applies only after parental rights have been severed.  In other words, contrary to the dissent's contention that we must take a "holistic view" of the entire termination process, including Rule 64(C), to determine the constitutionality of the meritorious defense requirement, *infra* ¶ 63, Rule 46(E)'s discretionary relief is separate from the due process rights afforded in the underlying severance proceedings.  *Cf. Ramos-Portillo v. Barr*, 919 F.3d 955, 963 (5th Cir. 2019) (holding that, in the context of denying a motion to reopen an immigration appeal, the "denial of discretionary relief does not rise to the level of a constitutional violation even if [the moving party] had been eligible for it" (alteration in original) (quoting *Altamirano-Lopez v. Gonzales*, 435 F.3d 547, 550 (5th Cir. 2006))).  This conclusion is bolstered by the fact that, unlike constitutional claims, we review the denial of a motion to set aside a judgment for abuse of discretion.  *Gonzalez*, 243 Ariz. at 533 ¶ 8; *see also id.* at 534 ¶ 11 (noting that Civil Rule 60(b)(1) invests "extensive discretion in trial courts").  Thus, the meritorious defense requirement's minimal burden placed upon a parent's Rule 46(E) discretionary relief following an otherwise constitutional severance of parental rights does not infringe her due process rights.  *Cf. Peralta v. Heights Med. Ctr., Inc.*, 485 U.S. 80, 86–87 (1988) (holding that the meritorious defense requirement was not required to support a motion to set aside a default judgment because the movant's due process rights were violated by lack of notice of the underlying suit).

**¶28**      The meritorious defense requirement does not evince a heightened risk of an erroneous deprivation of a parent's rights under the second *Mathews* factor.  The court of appeals concluded, however, that the requirement presents a significant risk of an erroneous severance of parental rights because, at a Rule 64(C) accelerated severance

hearing, the parent's attorney may be ill-prepared to present the parent's defense and the parent may be deprived of an opportunity to remedy the issue that led to the dependency. *Trisha A.*, 245 Ariz. at 33–34 ¶¶ 26–27. But this observation, like the dissent, conflates perceived due process risks associated with an accelerated severance hearing—an attorney's time to prepare a defense and the parent's opportunity to remedy parenting deficiencies (an issue not before this Court)—with whether the meritorious defense requirement for setting aside a judgment facially comports with due process.

¶29 As noted, *supra* ¶ 26, the meritorious defense requirement on a motion to set aside a judgment does not present an insurmountable hurdle but rather only a "minimal" burden. *Gonzalez*, 243 Ariz. at 534 ¶ 12 (quoting *United States v. Aguilar*, 782 F.3d 1101, 1108 (9th Cir. 2015)). In fact, to satisfy this requirement, the parent would have to demonstrate no more than a substantial, facially meritorious defense to the proven severance ground. *See Richas*, 133 Ariz. at 517. An attorney at all familiar with a parent's case could, within three months after severance, articulate a meritorious defense if one exists. *See* Ariz. R.P. Juv. Ct. 46(E) (providing that a moving party alleging grounds pursuant to Civil Rule 60(b)(1)–(3) must file a motion to set aside within three months of the final judgment). Further, an accelerated severance hearing would not unfairly deprive a parent of an opportunity to remedy the issues that led to the dependency because, as noted, *supra* ¶ 14, in some circumstances the parent would have had between six to fifteen months to remedy such issues prior to a severance proceeding. In any event, the meritorious defense requirement has no bearing on the parent's pre-severance rehabilitation because it applies only after entry of a severance judgment. We are not convinced that the meritorious defense requirement presents a constitutionally impermissible heightened risk of an erroneous deprivation of parental rights.

¶30 The third *Mathews* factor—the state's interest in protecting children from harm and providing them with timely stability and permanency through the orderly adjudication and finality in Rule 64(C) accelerated hearings—militates in favor of maintaining the meritorious defense requirement. The requirement balances the parties' rights and children's interests, including a child's need for timely permanency. Moreover, once a court finds grounds for termination of parental rights, the interests of the child and the parent diverge, which is why the children in this case were assigned a guardian ad litem. *See Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 4 ¶ 15 (2016); *see generally supra* ¶ 9. Requiring a parent whose rights have been severed by constitutionally permissible procedures to demonstrate good cause for a nonappearance and a non-frivolous substantial defense as a condition for setting aside a severance order does not impose an undue burden on the parent. This is especially so when the meritorious defense requirement's "minimal burden" is juxtaposed with the state's and children's important interest in a timely and final resolution of termination proceedings.

**IV.**

¶31        Requiring a meritorious defense in a Rule 46(E) motion to set aside a severance judgment following a Rule 64(C) accelerated hearing does not violate due process, and it also did not result in the severance of parental rights here.  Mother failed for sixteen months after the dependency to meaningfully communicate with her children, to provide for their needs, or to make meaningful efforts to achieve sobriety.  Further, despite notice, she failed to appear, without good cause, at her final January pretrial conference and at a February hearing scheduled to determine whether to set aside severance of her parental rights as a result of her nonappearance at the January hearing.  Mother's choices and actions and inaction over a year and a half, not the requirement that she show a meritorious defense to set aside the severance judgment, led to severance of her parental rights.

¶32        On this record, the juvenile court did not abuse its discretion by finding that Mother failed to show good cause for her nonappearance at the January hearing and, even if the juvenile court had applied the meritorious defense requirement to her Rule 46(E) motion, Mother did not identify a non-frivolous defense to the severance grounds resulting in the loss of her parental rights.  Accordingly, we affirm the juvenile court's severance order and vacate the court of appeals' opinion.

BOLICK, J., dissenting.

¶33 Twenty-five minutes. That is how quickly the State of Arizona can permanently dissolve a parent's legal relationship with her children. Not only after a full and fair evidentiary hearing intended and designed for that purpose, but, as here, during a routine status conference hastily converted into a final termination proceeding. Such a truncated proceeding and its consequences are intolerable in a free society that values the family relationship and guarantees due process of law. Because our law, properly construed, provides that a parent need only show good cause for her absence from a hearing in order to set aside the judgment in such circumstances, I respectfully dissent.

## I.

¶34 A hallmark of the rule of law is that our courts provide a level playing field for every individual. *See, e.g.*, *Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 28 (1981) ("[O]ur adversary system presupposes . . . [that] accurate and just results are most likely to be obtained through the equal contest of opposed interests . . . ."). But in Arizona, a parent against whom the state has initiated termination proceedings faces nearly insurmountable obstacles that are largely the result of a draconian statute rendered more oppressive by this Court's rules and decisions. Viewed in isolation, today's decision appears to impose only a modest additional burden on a parent seeking to preserve her rights. But in the aggregate, our termination of parental rights process strays far from essential constitutional requirements.

¶35 The right of parents to direct and control the upbringing of their children is one of America's foundational constitutional principles. *See, e.g.*, *Troxel v. Granville*, 530 U.S. 57, 65 (2000) (plurality opinion) ("[T]he interest of parents in the care, custody, and control of their children . . . is perhaps the oldest of the fundamental liberty interests recognized by this Court."); *Wisconsin v. Yoder*, 406 U.S. 205, 213–14 (1972); *Pierce v. Soc'y of Sisters*, 268 U.S. 510, 534–35 (1925); *Meyer v. Nebraska*, 262 U.S. 390, 399–402 (1923).

¶36 Our state's elected representatives enshrined those rights in statute as well. Section 1-601(A) establishes that "[t]he liberty of parents to direct the upbringing . . . of their children is a fundamental right." Section 1-601(B) provides that the state "shall not infringe on these rights without demonstrating that the compelling governmental interest . . . is of the highest order, is narrowly tailored and is not otherwise served by a less restrictive means."

12

¶37        Those rights are at their apex when the government moves to sever the parental relationship. The United States Supreme Court has recognized that "[w]hen the State initiates a parental rights termination proceeding, it seeks not merely to infringe that fundamental liberty interest, but to end it." *Santosky v. Kramer*, 455 U.S. 745, 759 (1982). Because "[f]ew forms of state action are both so severe and so irreversible," *id.*, the Constitution demands that when the government seeks to dissolve parental rights, "it must provide the parents with fundamentally fair procedures," *id.* at 753–54.

¶38        Such procedures are especially essential given that, even in the best of circumstances, "[t]he [s]tate's ability to assemble its case almost inevitably dwarfs the parents' ability to mount a defense," in light of the state's resources, expertise, and investigative powers; given the fact that the state's own experts and caseworkers typically comprise the main witnesses; and because the child is in agency custody. *Id.* at 763–64. Arizona's current termination procedures do not provide adequate due process protections.

¶39        Sections 8-531 through 8-544 establish procedures for a petition to terminate parental rights. Section 8-537(C) sets forth the consequences for a parent's failure to appear at any of the judicial proceedings involved in the process:

> If a parent does not appear at the pretrial conference, status conference or termination adjudication hearing, the court, after determining that the parent has been instructed as provided in § 8-535, may find that the parent has waived the parent's legal rights and is deemed to have admitted the allegations of the petition by the failure to appear. The court may terminate the parent-child relationship as to a parent who does not appear based on the record and evidence presented as provided in rules prescribed by the supreme court.

¶40        This statute, the constitutionality of which we have never considered, is remarkable in two major respects. First, it implicitly requires the parent to appear not just at the final adjudication hearing where her rights will be determined, and not just at hearings where her presence may be beneficial or necessary, but at *every* court proceeding, no matter how routine, including status conferences. I know of no other area of law, including criminal law, in which parties are required to attend all such proceedings. Second, the consequences of failing to appear at even a minor hearing can be catastrophic: the parent may be deemed to have waived all her rights and admitted the allegations in the severance petition, and it allows the court to sever parental rights

13

well before the scheduled final termination hearing. Again, I cannot think of a single instance elsewhere in the law in which failure to appear at a court hearing can lead to such dire consequences. The fact that the parent has notice that these consequences may occur if she fails to appear at a hearing cannot and does not license such a sweeping deprivation of fundamental rights. Transporting such a regime to the criminal law context would be unthinkable, and it should be equally so here, where the outcome is so drastic a deprivation of liberty.

¶41 The statutory command that the parent attend every hearing or risk termination of her parental rights is especially untenable given that the individuals involved may lack essential resources such as transportation, may be trying to hold a job, and may be involved in rehabilitation services. *See Melissa T. v. Dep't of Child Safety*, No. 1 CA-JV 18-0352, 2019 WL 439305, at *1 ¶¶ 1–4 (Ariz. App. Feb. 5, 2019) (mem. decision); *see also Lassiter*, 452 U.S. at 30. Those circumstances do not lend themselves to ready availability for frequent and routine court hearings. Yet as a majority of this Court has held, a parent can have her rights terminated if she misses even one such hearing out of more than a dozen. *See Marianne N. v. Dep't of Child Safety*, 243 Ariz. 53, 59 ¶ 33 (2017) (Eckerstrom, J., dissenting) (noting a parent may have her rights "defaulted" under a related statute even after attending fourteen hearings and attempting to call into a pretrial conference). And termination can occur very quickly once the process has commenced. *See Melissa T.*, 2019 WL 439305, at *1 ¶¶ 1–4 (affirming termination of mother's parental rights in an accelerated hearing two months after removal of child from mother's home despite attorney's assertion that mother could not attend the hearing because she had relocated and was working).

¶42 The Court's implementing rule, in turn, provides for notice that a parent's failure to appear at a hearing or conference "without good cause" may result in a finding that the parent "has waived legal rights, and is deemed to have admitted the allegations in the motion or petition for termination." Ariz. R.P. Juv. Ct. 64(C). The notice also provides that "the hearings may go forward in the absence of the parent . . . and may result in the termination of parental rights based upon the record and evidence presented." *Id.*

¶43 Rule 64(C) thus supplements the statutory process in two ways. It provides that the parent's rights may be waived and the allegations admitted only if the absence is "without good cause." But it also provides that the final determination of parental rights may occur at *the same hearing* at which the parent failed to appear, rather than at the previously scheduled final termination adjudication hearing. This scenario is referred to as an "accelerated hearing," which is what occurred here. As with the automatic waiver of rights and admission of allegations triggered by a parent's failure to appear at

any judicial proceeding, we have not yet considered the constitutionality of such accelerated hearings.

¶44 Ordinarily, as DCS's counsel stated during oral argument, a final termination hearing can take hours, days, or even weeks. By contrast, a pretrial hearing accelerated into a final termination adjudication can be (as illustrated by the twenty-five-minute proceeding here) a perfunctory affair, the outcome of which is preordained. After all, the parent is unavailable to testify and her attorney is not expecting or prepared to put on a case and is unlikely to have brought witnesses or exhibits. And importantly, if the court finds that the parent has failed to appear without good cause, the absent parent is deemed to have admitted the allegations contained within DCS's petition to sever. *See* § 8-537(C); Ariz. R.P. Juv. Ct. 64(C).

¶45 Indeed, depending on how early in the process an accelerated hearing takes place, DCS may not have yet made initial disclosures, and the parent's counsel may not have had an opportunity to interview the state's witnesses. Nor may parental rehabilitation efforts, which must be considered in certain termination proceedings, *see Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 151 ¶ 15 (2018), have fully run their course. For all those reasons, such hearings offend the most basic and essential due process guarantee, the right to be heard "at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (internal quotation marks omitted).

¶46 Our recent decisions skew an already unbalanced playing field even more decisively toward the state. In *Brenda D. v. Department of Child Safety*, the Court interpreted "failed to appear" in A.R.S. § 8-863(C) and Arizona Rule of Procedure for Juvenile Court 66(D)(2) to apply to a parent who merely arrives after a hearing has started, rather than one who fails to appear at all. 243 Ariz. 437, 443 ¶ 19 (2018). The Court went on to create procedures and penalties (that do not appear in the text of the statute or rule) for a parent who arrives late to a hearing. *Id.* at 444–45 ¶¶ 24–25. Under *Brenda D.*, a parent's mere late appearance without good cause serves as a failure to appear that triggers the default procedure under Rule 66(D)(2), a situation that Justice Timmer correctly noted "unacceptably dilutes the state's burden of proof because the parent is robbed of the ability to test the state's evidence." *Id.* at 450 ¶ 48 (Timmer, J., dissenting in part and concurring in part).

¶47 Most recently, the Court in *Alma S.* concluded that the state need not prove by clear and convincing evidence that it has made diligent efforts to reunify the family or that a parent's rehabilitation efforts have failed before terminating parental rights. 245 Ariz. at 149 ¶ 8, 151 ¶ 15 (relegating such considerations to a determination of the child's best interests, which are subject to a lesser evidentiary standard). By contrast, due process

requires that where the statutory ground for termination of parental rights is not a proxy for permanent unfitness, such factors must be considered in determining unfitness under the clear and convincing evidentiary standard. *Id.* at 154–55 ¶¶ 30–36 (Bolick, J., concurring in the result); *see also Santosky*, 455 U.S. at 759–60 ("The factfinding does not purport—and is not intended—to balance the child's interest in a normal family home against the parents' interest in raising the child. . . .  [I]t entails a judicial determination that the parents are unfit to raise their own children.").

¶48        This parental termination process, in which the state need not establish by clear and convincing evidence that parental unfitness is irremediable, and in which a status conference may be accelerated on literally a moment's notice into an abbreviated final termination proceeding if the parent misses or arrives late to the hearing, even if she has diligently appeared at more than a dozen prior proceedings, does not adequately reflect the fundamental nature of the rights involved nor the gravity of the state's actions. *See, e.g.*, *Troxel*, 530 U.S. at 65–66 (listing cases); *Santosky*, 455 U.S. at 753 ("Even when blood relationships are strained, parents retain a vital interest in preventing the irretrievable destruction of their family life.").

## II.

¶49        Today we consider whether to import into the parental termination context a judicially created standard from a very different legal context; specifically, whether a parent must not only show good cause for why she missed a judicial proceeding within a termination action but must also present a meritorious defense to the entire termination action.  The majority concludes she must do so.  That requirement, when viewed through the appropriate constitutional prism and based on the text of the relevant rules, is untenable and inappropriate.

¶50        As noted earlier, § 8-537(C) authorizes a court to terminate the parental rights of a parent who does not appear at a prescribed proceeding but leaves the process to the rule-making authority of this Court.  In turn, Rule 64(C) requires notice that a parent who fails to appear "without good cause" may be deemed to have waived legal rights and admitted the allegations in the severance petition and that the hearing may go forward and parental rights may be terminated in the parent's absence.  Ariz. R.P. Juv. Ct. 64(C).  Such a process is triggered by a "failure to appear . . . without good cause." *Id.* The rule nowhere references "meritorious defense," either as a separate requirement or as a component of the good cause showing.

¶51        The majority holds that the meritorious defense requirement is imported through Rule 46(E), which provides that a motion to set aside a judgment "shall conform

16

to the requirements of Rule 60(b)–(d), Ariz. R. Civ. P." Ariz. R.P. Juv. Ct. 46(E). But Rule 60 does not mention meritorious defense either. Rather, as pertinent here, Rule 60 allows a court to set aside a final judgment for "mistake, inadvertence, surprise, or excusable neglect" or "any other reason justifying relief." Ariz. R. Civ. P. 60(b)(1), (6). On the face of the rules, then, the mother here could have had the final judgment voided if she showed excusable neglect for her failure to attend or "any other reason justifying relief." *Id.*

**¶52** The majority nonetheless holds that a parent seeking to vacate a judgment must show not only good cause as required by the rules, but that she also has a meritorious defense to the underlying severance petition. We have applied that requirement (though, inexcusably, we have not amended our rules to reflect it) in the ordinary civil context where after a party has failed to defend the action, a default is entered under Arizona Rule of Civil Procedure 55 (allowing default judgment where the party "has failed to plead or otherwise defend"), and the party seeks relief from that default. *See Gonzalez v. Nguyen*, 243 Ariz. 531, 534 ¶ 12 (2018); *Richas v. Superior Court*, 133 Ariz. 512, 514 (1982).

**¶53** Arguing that the meritorious defense showing should be required here, the State relies primarily on *Richas*, where the Court applied the meritorious defense requirement in a slip-and-fall case in which a defendant sought to set aside a default. 133 Ariz. at 517. With respect, this is not a slip-and-fall case, and we should not mechanically transport a doctrine from the personal injury context to one in which considerably different and greater interests are at stake. The majority makes the same error when it relies on various cases discussing the meritorious defense requirement where the only interest at stake was monetary loss. *See Stanley v. Illinois*, 405 U.S. 645, 651 (1972) ("It is plain that the interest of a parent in the companionship, care, custody, and management of his or her children come[s] to this Court with a momentum for respect lacking when appeal is made to liberties which derive merely from shifting economic arrangements." (alteration in original) (internal quotation marks omitted)).

**¶54** It makes sense in the context of ordinary civil litigation to require a party against whom default was entered for failure to defend the action to demonstrate a meritorious defense in order to set it aside. It makes considerably less sense to require it of a party in jeopardy of losing her parental rights against whom default was entered only for failure to attend a status conference. *See In re A.N.D.*, 883 So. 2d 910, 914 n.3 (Fla. Dist. Ct. App. 2004) (contrasting default process for severance from a default under civil procedure rules); *In re E.D.J.*, 348 P.3d 1098, 1103 (Okla. Civ. App. 2014) ("Termination of a parent's parental rights is too serious to permit procedural shortcuts." (internal quotation marks omitted)); *cf. Mitchell v. Brown & Williamson Tobacco Corp.*, 294 F.3d 1309,

17

1316–17 (11th Cir. 2002) (noting that a default "is a drastic remedy which should be used only in extreme situations, as the court has available to it a wide range of lesser sanctions" (citation omitted)).

¶55        Put another way, the meritorious defense requirement in the civil litigation context flows from a failure to defend under Rule 55. *See* Ariz. R. Civ. P. 55(a)(1) (providing that entry of default may be obtained when a party "has failed to plead or otherwise defend"); *Gonzalez*, 243 Ariz. at 534 ¶¶ 11–12; *Richas*, 133 Ariz. at 514. Here, we do not have a Rule 55 predicate to justify requiring a meritorious defense. Rather, the predicate for what is essentially a default judgment is failure to attend a hearing "without good cause" under Rule 64(C). And Rule 46(E) refers to Rule 60, not to Rule 55, but it is Rule 55 that gives rise to the meritorious defense requirement.

¶56        In fact, Rule 64(C)'s default procedure is not even triggered *until* there has been a failure to appear without good cause—unlike Rule 55 which requires a meritorious defense as part of the good cause showing necessary to set aside a validly-entered default. Ariz. R. Civ. P. 55(c) (providing that "[t]he court may set aside an entry of default for good cause"). Rule 55 requires a showing of meritorious defense because there is "a principle of finality" that attaches to such a validly-entered default. *See Gonzalez*, 243 Ariz. at 534 ¶¶ 11–12 (internal quotation marks omitted). But here, Rule 64(C) explicitly provides that the accelerated process and concomitant default is only triggered by a failure to appear without good cause. Thus, the principle of finality that attaches to a default in the civil procedure context is not implicated under Rule 64(C) as it is not until the parent fails to show good cause that a judgment secured under Rule 64(C)'s process becomes effective under Rule 64(C)'s plain terms.

¶57        This Court has explicitly endorsed this exact notion in interpreting Rule 66(D)(2), which includes the same trigger—failure to appear without good cause—for the default procedure in a final termination hearing. In *Brenda D.*, the Court instructed that if "the parent does appear late but during the hearing, the juvenile court should immediately halt the proceedings to determine whether the parent can show 'good cause' *for his or her late arrival*." 243 Ariz. at 448 ¶ 41 (emphasis added). Only upon finding that no good cause exists for the late arrival may the juvenile court conclude that the parent has waived her legal rights. *Id.* ¶ 42. *Brenda D.* is extraordinarily clear: the necessary predicate for defaulting the parent is centered on a failure to appear without good cause.

¶58        Without that trigger, the default procedure under Rule 66(D)(2) is not implicated. And Rule 64(C) should be given the same reading as it has the same operative language. *Cf. F.A.A. v. Cooper*, 566 U.S. 284, 301 (2012) (noting "the rule of construction that Congress intends the same language in similar statutes to have the same meaning");

18

*Wyatt v. Wehmueller*, 167 Ariz. 281, 284 (1991) ("A court also should interpret two sections of the same statute consistently, especially when they use identical language."). Additionally, as the majority notes, *supra* ¶ 17, an acceleration converts a pretrial hearing into a final termination hearing, the exact type of hearing to which Rule 66(D)(2) applies. Thus, we should apply the same meaning to Rule 64(C) here as the Court applied to Rule 66(D)(2) in *Brenda D.*

**¶59**      In sum, the default and accelerated hearing process that Rule 64(C) provides for is predicated upon a failure to appear without good cause. Consequently, the Court errs by importing the meritorious defense showing required by Rule 55 here as that rule's set-aside procedure is predicated upon a validly-entered default. In contrast, a default under Rule 64(C) is not effective *until* the court finds that there was not good cause for the parent's failure to appear, the event that triggers the waiver of legal rights and default under the plain terms of Rule 64(C). The Court errs by failing to recognize the markedly different events that trigger application of Rule 64(C) versus Rule 55.

**¶60**      In short, nothing in the applicable juvenile court rules gives rise—expressly, conceptually, logically, or even impliedly—to a meritorious defense requirement. We are mixing apples and oranges in a way that makes for a constitutionally toxic concoction.

### III.

**¶61**      In deciding whether to apply in this context not merely Rule 60 but the meritorious defense requirement, its judicially created appendage, "we must strive to give [statutes and rules] meanings that avoid serious constitutional issues." *Brenda D.*, 243 Ariz. at 444 ¶ 23 (internal quotation marks omitted). Whenever a rule or procedure deprives a person of a liberty or property interest, its constitutionality must be measured against the procedural due process factors set forth in *Mathews*, 424 U.S. at 335: (1) the importance of the private interests affected by the proceeding, (2) the risk of error created by the state's chosen procedure, and (3) the countervailing government interest supporting the challenged procedure. *See Santosky*, 455 U.S. at 754 (applying *Mathews* factors to determine the appropriate burden of proof in child termination cases). Those factors here weigh strongly against importing the meritorious defense requirement into the termination of parental rights context.

**¶62**      The majority views the meritorious defense requirement in isolation, emphasizing that it is required only to dissolve a default judgment in which the parent's rights have been terminated. *Supra* ¶¶ 26–30. But the lack of due process safeguards in the accelerated termination process cannot be detached from the burden imposed on the parent seeking to recover her rights. The majority contends that due process is not

offended because the meritorious defense requirement creates only a "minimal burden," as "[a]n attorney at all familiar with a parent's case could, within three months after severance, articulate a meritorious defense if one exists." *See supra* ¶ 29. This notion is contrary to due process jurisprudence. The Supreme Court has recognized, "[w]here a person has been deprived of property in a manner contrary to the most basic tenets of due process, 'it is no answer to say that in his particular case due process of law would have led to the same result because he had no adequate defense upon the merits.'" *Peralta v. Heights Med. Ctr., Inc.*, 485 U.S. 80, 86–87 (1988) (quoting *Coe v. Armour Fertilizer Works*, 237 U.S. 413, 424 (1915)). Rather, "the right to procedural due process is 'absolute' in the sense that it does not depend upon the merits of a claimant's substantive assertions." *Hamdi v. Rumsfeld*, 542 U.S. 507, 530 (2004) (quoting *Carey v. Piphus*, 435 U.S. 247, 266 (1978)). As such, "only wip[ing] the slate clean" can restore a party "to the position he would have occupied had due process of law been accorded to him in the first place." *Peralta*, 485 U.S. at 87 (alteration in original) (internal quotation marks omitted).

**¶63**     Moreover, we must take a holistic view of the overall process and not merely examine it snippet by snippet. *See Fusari v. Steinberg*, 419 U.S. 379, 389 (1975) (stating courts review "the sufficiency of the entire process" that effectuates the deprivation to ensure conformity with due process). Therefore, the contours of the accelerated hearing process must be factored in when we are analyzing whether the process as a whole comports with due process as it is the *entirety* of the process that causes the deprivation. *See Santosky*, 455 U.S. at 763–64 (reviewing whether burden of proof to establish severance grounds sufficiently protected against erroneous deprivations in light of the potential for error embodied in the entire severance process); *Fusari*, 419 U.S. at 389 ("[T]he formality and procedural requisites for [a due process] hearing can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings." (alterations in original) (internal quotation marks omitted)). When parental rights are terminated at a hearing that was not contemplated for that purpose and at which the parent is deemed by law to have forfeited her rights, the burdens subsequently placed on the parent to vacate that judgment bear careful scrutiny under the *Mathews* test.

**¶64**     The first *Mathews* factor weighs heavily in favor of the parent. "A parent's interest in the accuracy and justice of the decision to terminate his or her parental status is . . . a commanding one." *Lassiter*, 452 U.S. at 27; *see also Santosky*, 455 U.S. at 758. Not only is a parent's liberty interest fundamental, but a "decision terminating parental rights is *final* and irrevocable. . . . Few forms of state action are both so severe and so irreversible." *Santosky*, 455 U.S. at 759; *see also Alyssa W. v. Justin G.*, 245 Ariz. 599, 601 ¶ 11 (App. 2018).

¶65          The second factor—the risk of error resulting from the state's chosen procedure—also weighs against importing the meritorious defense requirement. The accelerated final parental rights determination occurs, by definition, before the scheduled final adjudication. At that point in the process, the parent may not have had an opportunity to interview the state's witnesses, the state may not have yet provided initial disclosures, and the parent may not have completed rehabilitation services. *See Trisha A. v. Dep't of Child Safety*, 245 Ariz. 24, 33 ¶ 26 (App. 2018) ("At the time of such a preliminary proceeding, often months before the scheduled severance hearing, it is difficult to imagine what meaningful evidence a parent could offer in order to prove a meritorious defense.").

¶66          Even though the parent's burden is nominally light, the risk of erroneous deprivation is great. What qualifies as a meritorious defense lies in the eye of the beholder (the trial court) and that judgment will be disturbed only on an abuse of discretion. *Adrian E. v. Ariz. Dep't of Econ. Sec.*, 215 Ariz. 96, 101 ¶ 15 (App. 2007); *see also Santosky*, 455 U.S. at 762–63 (noting the risk of error is great where there are "imprecise substantive standards" and the court possesses great discretion in applying them). The majority, recognizing this reality, instructs courts to exercise their discretion carefully. *See supra* ¶ 14. But the rules contain no standards to guide such discretion (perhaps because the rules do not even mention the meritorious defense requirement), and we may overturn a trial court ruling not when the discretion is unwisely exercised but only when it is abused.

¶67          The third *Mathews* factor requires us to examine the state's interests. Here, the State sets forth two interests: the child's interest in a permanent home and administrative efficiency. But under the circumstances, the state's interests do not outweigh the parent's. The accelerated proceeding short-circuits a process that is calculated to protect both the parent's and child's interests. *See Santosky*, 455 U.S. at 767 (noting that state's interest "is served by procedures that promote an accurate determination of whether the natural parents can and will provide a normal home"). The child is already removed from any dangerous conditions and circumstances. *Trisha A.*, 245 Ariz. at 34 ¶ 27. A schedule culminating in a final termination hearing, in which a full presentation and review of relevant evidence take place, is already set. *Id.* Moreover, although the state's interest in efficiency is "legitimate, it is hardly significant enough to overcome private interests as important as those here." *See Lassiter*, 452 U.S. at 28. Forcing the parent to prematurely present a defense, even when she has provided good cause for missing a pretrial hearing, does not materially advance the state's interests, although it adds yet another procedural obstacle to the parent seeking to protect her rights that increases the odds of erroneous deprivation of her parental rights. *Cf. In re*

*E.D.J.*, 348 P.3d at 1103 (concluding that default for failure to appear in a termination action was erroneously entered under similar facts).

**¶68** Likewise, imposing the meritorious defense requirement plainly infringes on the fundamental right of parents to direct the upbringing of their children protected by § 1-601(A). The State has failed to show that requiring a meritorious defense to set aside a default under Rule 64(C) advances a compelling government interest of the highest order, that it is narrowly tailored to achieve a compelling government interest, and that the governmental interest cannot be adequately served by less restrictive means (such as requiring a set-aside upon a parent's showing of good cause for failing to appear). *See* § 1-601(B).

**¶69** Finally, today's decision offends another essential of due process, the right to know how to comply with the law. *F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012). I have previously criticized this Court for creating new rules in our decisions without amending the actual rules that people should be able to rely upon to learn the procedural requirements that may profoundly affect their rights and their lives. *See, e.g.*, *Phillips v. O'Neil*, 243 Ariz. 299, 306 ¶ 34 (2017) (Bolick, J., dissenting); *Allen v. Sanders*, 240 Ariz. 569, 574–75 ¶¶ 28–30 (2016) (Bolick, J., concurring in the result). The majority's decision creates not a roadmap but a labyrinth, and not just for the unwary but even for those trained in the law.

**¶70** How would an unrepresented parent learn that she must present a meritorious defense to the underlying action in order to set aside termination of her parental rights following an accelerated hearing? She could not learn of that requirement from the relevant statute, or even the relevant juvenile court rule, which indicates that she need show only good cause for her absence. Instead, she would need to find a provision elsewhere in the juvenile rules that incorporates a provision in a different set of rules. Even when she examined the pertinent civil procedure rules, she would not learn about the meritorious defense requirement because it does not appear there either. Rather, she would have to determine that the applicable requirement is contained not in the rules but in court decisions, not in the juvenile law context but unrelated civil litigation, and then assume the requirement applies here.

**¶71** For the foregoing reasons, I would not stray beyond the text of our rules to require more than good cause for failing to appear at a hearing in order to vacate a termination order resulting from an accelerated hearing. The Court's decision not only transgresses the plain text but interprets the rules in a way that violates due process. I would affirm the court of appeals' holding that "[t]hese proceedings deprived Mother of a fundamentally fair severance hearing." *Trisha A.*, 245 Ariz. at 35 ¶ 33.

**IV.**

¶72 Little is likely to change as a result of today's decision because the process is already overwhelmingly weighted against a parent seeking to preserve her legal status in a termination proceeding. As I recently observed, according to DCS statistics, termination petitions in recent years resulted in severance of parental rights approximately 99.94% of the time. *Alma S.*, 245 Ariz. at 153 ¶ 28 (Bolick, J., concurring in the result). But with each decision by this Court, the playing field grows more uneven, and the precious constitutional protections to which all parents are entitled further erode.

¶73 Nothing in this dissenting opinion should be taken to impugn DCS or its vital mission to protect vulnerable children. But the process our state has constructed creates the very real prospect that parents will lose their children not because they deserve to, but because they are unable to effectively defend their rights in a system that is stacked hopelessly against them. For those reasons, and with great respect to my colleagues, I dissent.