IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

ALYSSA W., *Appellant,*

*v.*

JUSTIN G., J.G., *Appellees.*

No. 1 CA-JV 17-0393
FILED 11-15-2018

---

Appeal from the Superior Court in Mohave County
No. L8015SV201607005
The Honorable Douglas Camacho, Judge *Pro Tempore*

**REVERSED AND REMANDED**

---

COUNSEL

Silk Law Office, Lake Havasu City
By Melinda Silk
*Counsel for Appellant*

---

**OPINION**

Judge Maria Elena Cruz delivered the opinion of the Court, in which Presiding Judge Michael J. Brown and Judge David W. Weinzweig joined.

---

**C R U Z**, Judge:

¶1 Alyssa W. ("Mother") challenges the juvenile court's order denying her petition to terminate the parental rights of Justin G. ("Father") to their son, J.G. Mother argues the court erroneously placed the burden on her to demonstrate that she personally made reasonable efforts to help Father overcome his alcohol abuse and reunify him with J.G. We hold that Arizona Revised Statutes ("A.R.S.") section 8-533(B) does not require a private party seeking to terminate another's parental relationship to make affirmative efforts to reunify that parent, but only to show that necessary rehabilitative services were made available to the parent or it would have been futile. We reverse and remand for a best interests determination.

**FACTUAL AND PROCEDURAL HISTORY**

¶2 J.G. was born in Lake Havasu City, in December 2012; his parents lived together for a time but never married. Mother and Father separated due, in part, to Father's alcohol abuse and Mother eventually filed a petition to terminate Father's parental rights to J.G.

¶3 Following a contested severance hearing, the juvenile court found that (1) Father has a history of alcohol abuse; (2) his alcohol abuse causes him to be unable to discharge his parental responsibilities; and (3) a reasonable belief exists that Father's chronic alcohol abuse will continue. After finding that "Father's unawareness of his substance abuse issues . . . shows that any attempts at [persuading him to seek help for his substance abuse issues] would likely have been futile," the court nonetheless declined to sever Father's parental rights because Mother failed to make reasonable efforts to reunify the family or show, notwithstanding its own earlier finding of likely futility, that such efforts would have been futile.

**¶4**        Mother filed a timely notice of appeal.  We have jurisdiction pursuant to A.R.S. § 8-235(A) and Arizona Rule of Procedure for the Juvenile Court 103(A).[1]

## DISCUSSION

**¶5**        Mother argues the juvenile court erred when it interpreted A.R.S. § 8-533(B) to require her, a private party, to prove she made reasonable efforts to reunify Father with J.G. or that such efforts would have been futile.[2]

**¶6**        We review *de novo* the court's interpretation of a statute.  *See Linda V. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 76, 78, ¶ 7 (App. 2005).  When construing a statute, we look first to the statutory language; if the language is plain and unambiguous, we apply it without resorting to other rules of statutory construction.  *Ariz. Dep't of Econ. Sec. v. Superior Court*, 186 Ariz. 405, 408 (App. 1996).  If the language of a statute or rule is unambiguous, "we apply it as written."  *Roberto F. v. DCS*, 237 Ariz. 440, 441, ¶ 6 (2015).  Only if the language is unclear do "we apply secondary principles of construction."  *Id.*

**¶7**        To terminate parental rights, a juvenile court must first find by clear and convincing evidence, A.R.S. § 8-863(B), the existence of at least one statutory ground for termination pursuant to A.R.S. § 8-533(B).  *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22 (2005).  Section 8-533(B)(3) permits the termination of parental rights when it is shown "[t]hat the parent is unable to discharge parental responsibilities because of . . . a history of chronic abuse of . . . alcohol and there are reasonable grounds to believe that the condition will continue for a prolonged indeterminate period."

I.        When the State Petitions to Terminate Parental Rights

**¶8**        Although the Department of Child Safety ("DCS") is the moving party on most parental terminations in Arizona, the relevant statute specifically allows private parties to petition for severance.  A.R.S. § 8-533(A) ("Any person or agency that has a legitimate interest in the welfare

---

[1]        J.G. is not subject to the Indian Child Welfare Act.

[2]        No answering brief was filed.  Thus, since Mother has raised a debatable issue, we may "treat the lack of a response as a confession of error and reverse on that basis."  *In re Pinal Cty. Juv. Action No. S-389*, 151 Ariz. 564, 565 (App. 1986).  In our discretion, we decline to do so.

of a child, including, but not limited to, a relative, a foster parent, a physician, the department or a private licensed child welfare agency," may commence a severance proceeding); *see* A.R.S. §§ 8-531(2), -501(A)(3) (defining "agency" and "department").

¶9        At issue here is a requirement applicable to some grounds for severance that the parent must have received "appropriate reunification services." The statute expressly requires proof of "reunification services" when a parent's rights are to be severed based on the length of time the child has been in the care of the DCS. A.R.S. § 8-533(B)(8) (six months, nine months, fifteen months in care); § 8-533(B)(11)(b) (child who has been returned to parent but is removed again within eighteen months). In these situations, the statute expressly places on the State the burden of providing the parent with reunification services, requiring proof that "the agency responsible for the care of the child has made a diligent effort to provide reunification services." A.R.S. § 8-533(B)(8), (11). In these instances, the State must show that it made reasonable efforts to reunify the family or demonstrate such efforts would have been futile. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 50, ¶ 18 (App. 2004) ("rehabilitative measures on the part of ADES would have been futile in remedying the cause for Appellant's inability to discharge parental responsibilities by the time of the severance hearing.").

¶10        Although not an express requirement of the statute, this court has held the State likewise must prove it offered reunification services to a parent whose rights it seeks to sever on grounds of mental illness or chronic substance abuse, including alcohol. *See Jennifer G. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 450, 453, ¶ 12 (App. 2005); *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 192, ¶ 34 (App. 1999). In *Mary Ellen C.*, this court found the State has a duty under the constitution to show it has made reasonable efforts to preserve the family before it can seek severance based on mental health grounds. 193 Ariz. at 192, ¶ 32. Specifically, we reasoned, "our courts have defined it on constitutional grounds as a necessary element of any state attempt to overcome what the United States Supreme Court has described as the 'fundamental liberty interest of the natural parents in the care, custody and management of their child.'" *Id.* (citing *Santosky v. Kramer*, 455 U.S. 745, 753 (1982)). Accordingly, DCS must give parents the time and opportunity to participate in programs that could help them become effective parents prior to moving for severance. *See Maricopa Cty. Juv. Action No. JS-501904*, 180 Ariz. 348, 353 (App. 1994). The same reasoning was later applied to severances based on chronic substance abuse, including alcohol, in *Jennifer G.*, 211 Ariz. at 453.

II.    When a Private Party Petitions to Terminate Parental Rights

¶11    Severance proceedings implicate the same fundamental constitutional liberty interests of a parent, whether commenced by DCS or a private party, because the object of the proceedings is the same—namely, a court-ordered permanent loss of the parent's relationship with the child. "The combined effect of the fundamental character of a parent's right to his child and the severity and permanence of termination dictates that the court sever the parent-child relationship only in the most extraordinary circumstances, when all other efforts to preserve the relationship have failed." *Maricopa Cty. Juv. Action No. JA 33794*, 171 Ariz. 90, 91-92 (App. 1991) (citations omitted).  But the question here is whether private parties seeking a severance must meet the same requirements as the State.

¶12    Mother sought severance based on A.R.S. § 8-533(B)(3), arguing that Father was "unable to discharge parental responsibilities because of . . . chronic abuse of . . . alcohol."  We conclude a private party seeking severance on that ground must show that the parent was offered reunification services or that such services would have been futile.

¶13    To be clear, although the statute does not explicitly require private parties to prove that reasonable efforts at family reunification have been made when seeking severance of parental rights on the basis of chronic substance abuse, we hold that in such a case, severance requires proof *that services were offered*, but the parent's alcohol abuse was not amenable to rehabilitative services, or that providing such services would be pointless.

¶14    We do not hold, however, that a private party seeking severance on grounds of alcohol abuse must herself have offered or provided those "appropriate reunification services" to the parent.  As noted, A.R.S. § 8-533(B) expressly imposes that requirement on the State in certain situations, but the statute does not impose the same duty on a private party seeking severance.  Accordingly, the private party need not necessarily attempt to persuade the parent to seek treatment, or seek treatment referrals for the parent, or attempt to coax the parent into services by offering some incentive in the hope rehabilitation will somehow materialize.  We recognize that, unlike a government agency, private parties may not be in a position to make available to the parent the "type of therapy [that] offer[s] the most hope for enabling the [parent] to carry out [their] parental responsibilities[,]" nor can most private parties engage in the type of "prolonged," painstaking efforts readily available to the State. *Maricopa Cty. Juv. Action No. JS-5209 & JS-4963*, 143 Ariz. 178, 189 (App.

1984). Neither are private parties usually able to engage in the follow up necessary to sufficiently secure a service provider's medical or therapeutic records to adequately monitor the parent's progress, or lack thereof; nor should they be required to do so.

¶15 Instead, the private party need only show that the parent whose rights are to be severed has either already received or been offered the necessary rehabilitative services from some provider to no avail or that engaging the parent in rehabilitative services would be futile. Evidence of efforts by the private party to encourage or induce the parent to participate in services may be offered by the private party seeking severance, but it is not required.

III.    Mother's Burden in This Case

¶16 The juvenile court found "Mother failed to prove by clear and convincing evidence that she made reasonable efforts to reunify the family or that such efforts would have been futile," but also found "Father's unawareness of his substance abuse issues, even today, shows that *any attempts at persuasion would likely have been futile*." We look to the record to resolve these inconsistent findings. We review a juvenile court's order in a severance matter for an abuse of discretion and accept the court's factual findings unless clearly erroneous. *Mary Lou C.*, 207 Ariz. at 47, ¶ 8.

¶17 In determining what reasonable efforts Mother could have made to assist Father in his rehabilitation, the court reached the following conclusions:

> The Court recognizes Mother's difficulty in determining what efforts would be reasonable for her to take. Mother has no authority to control Father because he is an adult and can make his own decision. She could not have forced Father to go to outpatient treatment, inpatient treatment, alcoholics anonymous, or some other support group. For this reason, *the main efforts that Mother could have made would have been to try to persuade him* to seek treatment for his substance abuse.

(Emphasis added.) The court also found that, although Mother testified she talked to Father about his drinking and told him to get help and "Father agreed that Mother and Father had spoken about Father's drinking, and that Mother told him he should not drink after work," that nonetheless Mother enabled Father's drinking when she assisted him in driving impaired by blowing into the breathalyzer machine installed on his vehicle and that "she never requested that Father be ordered, [in the family court

6

case,] to treatment or counseling." Therefore, it found "Mother did not take reasonable efforts to help Father address his alcohol abuse issues, and thereby reunify the family (Father and [J.G.])."

¶18 In determining whether efforts to assist Father would have been futile, the court stated there was "no evidence to suggest that it would have been futile for Mother to have offered Father unsupervised parenting time if he successfully an [sic] completed alcohol abuse treatment[,]" and that there was "no evidence that asking the Court to condition parenting time on providing clean alcohol tests and obtaining alcohol abuse treatment would not have been futile."[3]

¶19 Contrary to the court's findings at ¶ 18 *supra*, the record contains ample evidence to suggest Father's parenting time had already been adversely affected by his substance abuse. The frequency, location and supervised nature of his parenting time were the result of his alcohol abuse, and yet, those limitations did not cause him to address his alcohol abuse issues. Also, Mother testified that in the parties' family court case,[4] Mother asked the court to deny Father parenting time because his chronic alcohol abuse made him unfit to parent. Further, as her petition alleged:

> Domestic violence has occurred between the parties. He drinks almost every night and can become violent when he drinks. He will come home drinking after leaving the gym. He does not spend time with our son or attempt to have a parent/child relationship. He has a breathalyzer installed in his vehicle. He has an interest in different women, and not having the parent/child relationship has ended the relationship. I feel our son deserves better.

¶20 In that contested proceeding Mother was awarded sole legal decision-making authority over J.G. and Father was granted parenting

---

[3] Although this latter statement reads as supporting a finding of futility, the context suggests a typographical error in the inclusion of the word "not," and that the court intended to say, "no evidence that asking the Court to condition parenting time on providing clean alcohol tests and obtaining alcohol abuse treatment *would* have been futile."

[4] The court took judicial notice of Mother's Petition to Establish Legal Decision Making, Parenting Time Rights, and Child Support as filed on October 24, 2014, and of the minutes of the default hearing held on June 29, 2015, both filed in Mohave County Superior Court case no. DO-2014-07830.

time, but only when supervised by a third party as approved by Mother. The juvenile court heard testimony from J.G.'s maternal grandfather and his wife. The two grandparents relocated to Lake Havasu to serve as third party supervisors of Father's parenting time with J.G. They both testified to the need for their relocation to assist with parenting time supervision, that during a visit Father arrived smelling of alcohol, "that he just sat there on the bench . . . was just all sprawled over, had [an] energy drink in his hand, eyes bloodshot, just . . . he wasn't interacting at all." Given the previous family court proceedings, Father was well aware that his chronic alcohol consumption affected his parenting time and was the reason for the supervised nature of the visits. The findings that there was "no evidence to suggest that it would have been futile for Mother to have offered Father unsupervised parenting time, if he successfully an [sic] completed alcohol abuse treatment," and that there was "no evidence that asking the Court to condition parenting time on providing clean alcohol tests and obtaining alcohol abuse treatment would not have been futile" are not supported by the record.

¶21        In contrast, the record most assuredly supports the juvenile court's finding that "Father's unawareness of his substance abuse issues, even today, shows that any attempts at persuasion would likely have been futile." As previously stated at ¶ 7, *supra*, in this case Mother was required to prove all elements of A.R.S. § 8-533(B)(3), and she was also separately required to establish the futility of making attempts at reunification. The court found that all of the elements of A.R.S. § 8-533(B)(3) were established when it found that Father has a "history of alcohol abuse," that his "alcohol abuse causes him to be unable to discharge parental responsibilities," and that "there is a reasonable belief that the chronic alcohol abuse will continue." In light of our holding that Mother did, in fact, establish the futility of making reunification attempts, the result is that the statutory ground alleged is now proven.

IV.    Best Interests Finding on Remand

¶22        To grant a petition for severance, the court must also find by a preponderance of the evidence that termination is in the child's best interests. *See Kent K.*, 210 Ariz. at 284, ¶ 22. On remand, the juvenile court must determine whether termination of Father's parental rights would be in J.G.'s best interests.

## CONCLUSION

**¶23** Because the court's denial of Mother's petition to terminate Father's parental rights is based solely on Mother's failure to show that efforts to reunify the family (Father and child) would be futile, we reverse the court's orders and judgment and remand for further proceedings.

**¶24** On remand, the court, having previously found Mother has proven by clear and convincing evidence all elements of termination pursuant to A.R.S. § 8-533(B)(3), shall now determine whether severance is also in the child's best interests.



AMY M. WOOD • Clerk of the Court
FILED: AA