NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

MARIO B.,
*Appellant,*

v.

DEPARTMENT OF CHILD SAFETY, J.B.,
TOHONO O'ODHAM NATION,
*Appellees.*

No. 1 CA-JV 20-0332
FILED 3-23-2021

Appeal from the Superior Court in Maricopa County
No. JD531872
The Honorable Kristin Culbertson, Judge

**AFFIRMED**

COUNSEL

David W. Bell Attorney at Law, Higley
By David W. Bell
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Thomas Jose
*Counsel for Appellee Department of Child Safety*

Law Office of Justin Fernstrom
By Justin Fernstrom
*Counsel for Appellee Tohono O'odham Nation*

---

## MEMORANDUM DECISION

Judge David D. Weinzweig delivered the decision of the Court, in which Presiding Judge David B. Gass and Judge Michael J. Brown joined.

---

**W E I N Z W E I G**, Judge:

¶1         Mario B. ("Father") appeals the superior court's order terminating his parental rights to J.B. ("Child"). The Indian Child Welfare Act ("ICWA") applies through Mother's lineage. *See* 25 U.S.C. §§ 1902-03. For reasons that follow, we affirm the judgment terminating Father's parental rights.

### FACTS AND PROCEDURAL BACKGROUND

¶2         Father is Child's biological parent.[1] Between August and September 2018, the Department of Child Services ("DCS") secured temporary custody of Child and petitioned the superior court to find Child dependent as to Father based on allegations of domestic abuse, neglect and substance abuse. The Tohono O'odham Nation ("Nation") later intervened because Mother and Child were affiliated with the Nation. Child was found dependent in March 2019.

¶3         DCS twice referred Father for substance abuse treatment and testing, but he missed most of the drug tests and failed most he took. He likewise missed several domestic violence counseling sessions. The provider ultimately closed each referral based on Father's lack of engagement and success.

¶4         In August 2019, DCS moved to terminate Father's parental rights on grounds of neglect, substance abuse and time-in-care. The court denied the motion in January 2020, finding that DCS had not made active or reasonable efforts to help Father reunify because DCS had not referred Father for a third time to substance abuse treatment after he tested positive for THC and methamphetamines.

---

[1]     The court terminated Mother's parental rights in November 2019; she is not party to this appeal.

**¶5**        Consistent with the court's direction, DCS again referred Father to substance abuse treatment, but he continued to miss drug tests, and domestic-violence services were closed out for inconsistent attendance.

**¶6**        DCS again moved to terminate Father's parental rights in February 2020 on grounds of substance abuse and fifteen months time-in-care. After performing a bonding and best-interests assessment in May 2020, a licensed psychologist determined that Child was at risk because of Father's issues relating to anger management, domestic violence and substance abuse.

**¶7**        The superior court held a contested severance hearing over two days in July and August 2020. Father was present, represented by counsel and testified on his own behalf. The court heard testimony of case managers from DCS and the Nation. The Nation's case manager testified that Child's placement complied with ICWA and that DCS had made active efforts to reunify Father and Child, which were unsuccessful. The psychologist also testified that Father could not safely parent Child.

**¶8**        In October 2020, the court terminated Father's parental rights to Child on both grounds alleged and found termination was in Child's best interests because he was adoptable, succeeding in his placement and would remain at risk with Father. The court also found that DCS made "active" efforts to provide reunification services under ICWA. Father timely appealed. We have jurisdiction. *See* A.R.S. § 8-235(A).

## DISCUSSION

**¶9**        Father has a fundamental—but not absolute—right to parent his children. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248, ¶¶ 11-12 (2000). To sever the parent-child relationship, the juvenile court must find clear and convincing evidence of at least one statutory ground under A.R.S. § 8–533(B), and must find by a preponderance of the evidence that termination is in the child's best interests. *Id.* We will affirm a severance order unless it is clearly erroneous. *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002). We accept the court's findings of fact unless no reasonable evidence supports them, *id.*, and view the evidence in the light most favorable to upholding the order, *Denise R. v. Ariz. Dep't of Econ. Sec.*, 221 Ariz. 92, 97, ¶ 20 (App. 2009), but review legal questions de novo, *Arturo D. v. Dep't of Child Safety*, 249 Ariz. 20, 23, ¶ 9 (App. 2020).

**¶10**        Father argues the juvenile court erroneously found that DCS made active and reasonable reunification efforts and that termination was in Child's best interests. Because Father shows no error, we affirm.

### I.     Reunification Efforts

**¶11**     Before terminating parental rights on substance abuse grounds, the court must find that DCS "made reasonable efforts to reunify the family or that such efforts would have been futile." *Jennifer G. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 450, 453, ¶ 12 (App. 2005). Reasonable efforts "give parents the time and opportunity to participate in programs that could help them become effective parents prior to moving for severance." *Alyssa W. v. Justin G.*, 245 Ariz. 599, 601, ¶ 10 (App. 2018).

**¶12**     And, before terminating parental rights to an Indian child, DCS must prove by clear and convincing evidence that "active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful." *Yvonne L. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 415, 421, ¶¶ 20, 26 (App. 2011); *accord* 25 U.S.C. § 1912(d). DCS must provide those services with "a reasonable prospect of success," *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 192, ¶ 34 (App. 1999), but "is not required to provide every conceivable service or to ensure that a parent participates in each service it offers," *Maricopa Cnty. Juv. Action No. JS-501904*, 180 Ariz. 348, 353 (App. 1994).

**¶13**     If DCS made "active efforts" under ICWA, it also made "reasonable efforts" because the "active efforts" requirement is at least as stringent as the "reasonable efforts" requirement. *See Vanessa W. v. Dep't of Child Safety*, 2018 WL 2147213, *3, ¶ 16 (App. 2018). Thus, the same analysis supports both findings. *Id.*

**¶14**     DCS referred Father to individual counseling, substance abuse treatment and testing, domestic abuse counseling and treatment, along with transportation services. The Nation's case manager testified that the Nation believed DCS made active efforts, providing services "sufficient enough for the Father" but which ultimately proved unsuccessful.

**¶15**     Still, Father contends DCS did not make active efforts to remedy his substance abuse issues after he was attacked by several men and hospitalized in January 2019. He argues in particular that substance abuse services were futile unless and until he received mental health services. But the court received testimony and evidence that Father poorly engaged with substance abuse services before and after the January 2019 attack, including after Father received mental health services and medication. Reasonable evidence supports the court's decision finding that

DCS made active efforts to reunify Father and Child. *Jesus M.*, 203 Ariz. at 280, ¶ 4.

**¶16** We thus affirm that DCS made active and reasonable efforts regarding Father's chronic substance abuse and decline to address his challenge to the fifteen months time-in-care ground. *See id.* at ¶ 3 ("If clear and convincing evidence supports any one of the statutory grounds on which the juvenile court ordered severance, we need not address claims pertaining to the other grounds.").

## II. Best-interests Finding

**¶17** Father also challenges the juvenile court's finding that termination is in Child's best interests. Termination is in a child's best interests if the child "would derive an affirmative benefit from termination or incur a detriment by continuing in the relationship." *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 6 (App. 2004).

**¶18** We find no abuse of discretion because the record includes reasonable evidence to support the court's best-interests finding. The record indicates that Child is adoptable and thriving in his current family placement with maternal great aunt. *See id.* at 335, ¶ 8 ("In combination, the existence of a statutory ground for severance and the immediate availability of a suitable adoptive placement for the children frequently are sufficient to support a severance order."); *Audra T. v. Ariz. Dep't of Econ. Sec.*, 194 Ariz. 376, 377, ¶ 5 (App. 1998). The court found "[t]his family placement allows child to maintain relationships with extended family members," "[m]aternal great aunt [has] provided child with a loving and nurturing home environment," and Child "is thriving in her care." A psychologist who examined Father and Child also concluded that termination would be in Child's best interests. The court found that Child would remain at risk without termination because of Father's instability and lack of impulse control.

**¶19** Father counters that termination was not in Child's best interests because Father and Child are bonded. But the court acknowledged and weighed this bond, which is not dispositive. *Dominique M. v. Ariz. Dep't of Child Safety*, 240 Ariz. 96, 98-99, ¶ 12 (App. 2016). We

will not reweigh the evidence on appeal. *Hurd v. Hurd*, 223 Ariz. 48, 52, ¶ 16 (App. 2009).[2]

## CONCLUSION

¶20        For these reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED:    AA

---

[2]        Father also contends the court should have never reached the best-interests prong because DCS failed to make "diligent and active efforts to provide Father with appropriate services to facilitate" reunification between Father and Child. This is the same argument addressed in the previous section and it fails for the same reasons here.