NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

### DIVISION ONE

---

IN RE TERMINATION OF PARENTAL RIGHTS AS TO D.C., L.C., and
V.C.

No. 1 CA-JV 22-0211
FILED 3-28-2023

---

Appeal from the Superior Court in Maricopa County
No. JD532019
The Honorable Amanda M. Parker, Judge

**AFFIRMED**

---

COUNSEL

Maricopa County Legal Defender's Office, Phoenix
By Jamie R. Heller
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Amanda Adams
*Co-Counsel for Appellee Department of Child Safety*

The Huff Law Firm PLLC, Tucson
By Daniel R. Huff, Laura J. Huff
*Co-Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Presiding Judge Jennifer M. Perkins delivered the decision of the Court, in which Judge Angela K. Paton joined. Judge D. Steven Williams dissented.

---

**P E R K I N S**, Judge:

¶1         Daniel C. ("Father") appeals the termination of his parental rights to his three children. The children's mother ("Mother") is not a party to this appeal. For the following reasons, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2         Father has three children; all are parties to this appeal: Devin, born in 2011; Lawrence, born in 2012; and Vern, born in 2016 (collectively "the Children"). We use pseudonyms to protect the children's identities.

¶3         While living in New Jersey before 2018, Father was arrested five to six times for domestic violence against Mother. Fearing Father, Mother fled from New Jersey to Arizona in August 2018 with the Children while Father was incarcerated. Shortly thereafter, Father also moved to Arizona, claiming Mother had asked for his help because they were homeless.

¶4         In August 2018, New Jersey Child Protective Services requested a welfare check on Mother and the Children, and the Arizona Department of Child Safety ("DCS") contacted Mother. Two months later, DCS removed the Children from the parents' care and filed a dependency petition. The petition alleged Mother and Father were unable to parent due to domestic violence, substance abuse, neglect, and Mother's mental illness. In December 2020, DCS dismissed the petition "based on Mother's continued progress with counseling and psychiatric treatment, as well as her continued separation from Father and consistent negative drug tests."

¶5         On May 1, 2021, police responded to another welfare check at Mother's apartment and contacted Father. Tempe police discovered Father's outstanding warrant for a failure to appear and a New Jersey protective order prohibiting contact with Mother. The police took Father to jail but released him on the condition that he not return to Mother's apartment, which would violate the protective order. Father returned to Mother's apartment. On May 5, police responded to another welfare check

at Mother's apartment and arrested Father for violating his release conditions and assaulting Mother while intoxicated. One of the children, Vern, witnessed the assault and attempted to intervene. The Children told DCS they regularly witnessed Father's domestic violence. Devin stated that one time Father pushed him into a wall leaving a hole.

¶6 In late May 2021, DCS removed the children again and filed another dependency petition. The new petition alleged Father was unable to parent due to domestic violence, substance abuse, and incarceration.

¶7 Father remained incarcerated until August 2, 2021. Upon release, Father had three years of probation. DCS offered Father substance abuse testing and treatment, as well as supervised visitations, and domestic violence counseling.

¶8 During the first dependency in 2018 to 2020, Father tested positive for both alcohol and marijuana multiple times as well as once for cocaine. During the second dependency initiated in 2021, he tested positive for marijuana at almost every test, as well as once each for methamphetamine and alcohol. The court found the Children dependent as to Father for a second time in October 2021.

¶9 A substance abuse treatment agency closed out Father's case after he missed several sessions due to his work schedule. Father then reenrolled in another program in April 2022. DCS filed its second termination petition in May 2022. Between Father's May 2021 incarceration and the termination hearing in August 2022, Father only tested positive for alcohol one time, in April 2022. But Father also missed three out of five scheduled tests in March.

¶10 Since the April 2022 positive test, Father showed improvement. He maintained sobriety and attended substance abuse treatment sessions. He established stable housing and employment, and DCS remarked at the termination hearing that his visitation sessions with the Children were "going well." But Father missed one test in July and two in August before the termination hearing. Based on this progress, the juvenile court concluded DCS failed to present sufficient evidence to terminate Father's parental rights due to a prior removal. In the context of that ruling the court stated it "[could not] find that Father is *currently* unable to discharge parental responsibilities." But it terminated Father's parental rights to the Children on the chronic substance abuse ground.

**DISCUSSION**

¶11        We review the termination of parental rights for an abuse of discretion. *Titus S. v. Dep't of Child Safety*, 244 Ariz. 365, 369, ¶ 15 (App. 2018). On appeal, due process requires us to assess whether a reasonable factfinder could conclude, based on the record, that the state has met its clear and convincing evidentiary burden to sustain the termination of parental rights. *See Santosky v. Kramer*, 455 U.S. 745, 747–48, 769 (1982). We will uphold the court's findings of fact "if supported by adequate evidence in the record." *Christy C. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 445, 451–52, ¶ 19 (App. 2007) (cleaned up).

### I.        Statutory Ground for Termination

¶12        To terminate the parent-child relationship, the juvenile court must find parental unfitness based on at least one statutory ground under A.R.S. § 8-533(B). *See Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22 (2005). Here, the court found parental unfitness under the chronic substance abuse ground. To terminate parental rights on this ground, DCS must offer clear and convincing evidence that Father (1) has a "history of chronic abuse of controlled substances," (2) cannot discharge parental responsibilities because of his chronic substance abuse, and (3) "there are reasonable grounds to believe that [his] condition will continue for a prolonged and indeterminate period." *Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 377, ¶ 15 (App. 2010). The court evaluates the circumstances at the time of the termination hearing. *Shella H. v. Dep't of Child Safety*, 239 Ariz. 47, 50, ¶ 12 (App. 2016).

¶13        Chronic substance abuse need not be constant but must be long-lasting. *Jennifer S. v. Dep't of Child Safety*, 240 Ariz. 282, 287, ¶ 17 (App. 2016). Importantly, a parent's temporary abstinence from alcohol does not outweigh his significant history of alcohol abuse. *Id. See also Raymond F.*, 224 Ariz. at 379, ¶ 29; *Maricopa Cnty. Juv. Action No. JS-501568*, 177 Ariz. 571, 577 (App. 1994) (Parent's successful efforts at recovery were "too little, too late" at the time of termination).

¶14        The juvenile court terminated Father's parental rights due to the "uncertainty" regarding Father's battle with alcohol. And the record contains ample evidence to support that uncertainty. Father began drinking in 1997 at age 15 and battled with addiction in his mid-twenties and early thirties. His addiction resulted in numerous law enforcement engagements including repeated arrests and incarceration for domestic violence in both Arizona and New Jersey. The DCS case manager testified that "[a]lmost all of the domestic violence incidents that the children have been witness to

have been fueled by alcohol" and his current sobriety was insufficient to demonstrate he had remedied his alcohol abuse.

¶15        To terminate on the substance abuse ground, the juvenile court must find that Father is unable to parent due to substance abuse at the time of the termination hearing. *See Raymond F.*, 224 Ariz. at 377, ¶ 15 ("parent is unable to discharge parental responsibilities because of his chronic abuse of controlled substances or alcohol") (citing A.R.S. § 8-533(B)(3)). While the juvenile court did not explicitly state Father is unable to parent when it considered the chronic substance abuse ground, the court reviewed the statutory factors in detail and "weigh[ed] heavily" Father's inability to demonstrate sobriety for longer than six or seven months. The court also noted that the children "did not feel safe at home except for when Father was in jail" due to the parents "always yelling and fighting when Father was drinking alcohol." And, after walking through each of the *Raymond F.* factors, the court explicitly determined that DCS proved by clear and convincing evidence that Father's prolonged substance abuse warranted termination of his parental rights.

¶16        But when considering the remaining statutory grounds for termination, the juvenile court concluded DCS failed to meet its burden. In doing so, the court stated:

> Father has been sober from alcohol since April 2022. At the time of the termination adjudication hearing, Father had stable housing and employment. He was still engaging in counseling and substance abuse treatment. His visits with the children were going well. He is not presently living with Mother. Although . . . the Court believes Father's battle with alcohol remains uncertain and that there are valid, documented reasons to believe his alcohol abuse will continue, the Court cannot find that Father is *currently* unable to discharge parental responsibilities.

This conclusion conflicts with the court's conclusion on the chronic substance abuse ground, which necessarily included a determination that Father is unable to discharge his parental duties. The two findings are irreconcilable and "[w]e look to the record to resolve these inconsistent findings." *Alyssa W. v. Justin G.*, 245 Ariz. 599, 602, ¶ 16 (App. 2018).

¶17        Father had an extensive history with substance abuse, no significant periods of sobriety historically, and a recent relapse. The record supports the court's determination that his battle with substance abuse would likely continue and thus warranted termination. When considering

a parent's drug addiction, we consider the treatment history and parent's ability to implement a system to maintain sobriety. *Raymond F.*, 224 Ariz. at 378, ¶¶ 25, 27–29 (App. 2010).

¶18 To be sure, Father had made admirable progress at the time of the August 2022 termination hearing. But our task is to evaluate whether a reasonable factfinder could conclude, based on the record, that the state has met its clear and convincing evidentiary burden to sustain the termination of parental rights. The record shows Father endangered the Children when he engaged in domestic violence while under the influence of alcohol and they did not feel safe at home as a result. Father's extended history of alcohol abuse, recent relapse, missed tests before and after the relapse, and lack of extended sobriety are sufficient to sustain the termination.

## II. Best Interests

¶19 Father also challenges the juvenile court's best interests conclusion. "[A] determination of the child's best interest must include a finding as to how the child would benefit from a severance *or* be harmed by the continuation of the relationship." *Titus S.*, 244 Ariz. at 369, ¶ 17 (quoting *Maricopa Cnty. Juv. Action No. JS-500274*, 167 Ariz. 1, 5 (1990)). Courts must consider a "child's adoptability and the parent's rehabilitation." *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 148, ¶ 1 (2018).

¶20 The juvenile court considered the Children's adoptability and their long tenure with DCS placement. The Children currently live with a family that is willing to adopt them. The court indicated the Children "deserve permanency and stability" and found it reasonably likely the Children would end up back in foster care due to Father's struggles with substance abuse. The record shows that a continued relationship with Father could be detrimental, as Father has engaged in domestic violence when drinking. Reasonable evidence supports the juvenile court's conclusion that termination is in the best interests of the Children.

## CONCLUSION

¶21 We affirm.

**W I L L I A M S**, J., dissenting:

**¶22**         I respectfully part with the majority on how to remedy the juvenile court's "irreconcilable" findings, *supra* ¶ 16, pertaining to Father's ability to discharge his parental duties in light of his history of chronic substance abuse.

**¶23**         The juvenile court took care to write an organized and thorough termination order. That order addressed Father's ability to discharge his parental duties under more than one section. But the court made only one express finding on the issue. The court wrote that it "cannot find that Father is *currently* unable to discharge parental responsibilities."

**¶24**         In other words, despite Father's history of chronic substance abuse, Father remained able to discharge his parental duties seemingly, in part, because at the time of the termination trial he (1) had "been sober from alcohol since April 2022"; (2) "had stable housing and employment"; (3) "was still engaging in counseling and substance abuse treatment"; (4) "[h]is visits with the children were going well"; and (5) he was "not presently living with Mother." Record evidence supports the court's findings and conclusion on this issue.

**¶25**         Because Father remained able to discharge his parental duties, I would vacate the termination order and remand given the ongoing dependency. *Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 377, ¶ 15 (App. 2010) (holding that termination of parental rights on grounds of history of chronic substance abuse also requires, *inter alia*, clear and convincing evidence that a parent *cannot* discharge parental responsibilities because of his chronic substance abuse.).



AMY M. WOOD • Clerk of the Court
FILED:    AA

7